UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMBER LAVENDER,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 3:10-cv-05785-RJB-KLS

REPORT AND RECOMMENDATION

Noted for August 12, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for supplemental security income ("SSI") benefits.  This matter has been referred to

the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR

4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

After reviewing the parties' briefs and the remaining record, the undersigned submits the

following Report and Recommendation for the Court's review, recommending that for the

reasons set forth below, the decision to deny benefits should be reversed and this matter should

be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On November 3, 2008, plaintiff filed an application for SSI benefits, alleging disability as

of September 1, 2006, due to mental problems, an attention deficit hyperactivity disorder and

blockage in her intestines.  See Administrative Record ("AR") 12, 148, 199.  Her application was

denied upon initial administrative review and on reconsideration.  See AR 12, 67, 70, 78.  A

REPORT AND RECOMMENDATION - 1

hearing was held before an administrative law judge ("ALJ") on March 2, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See AR 29-63.

On April 13, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 12-23. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 28, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 416.1481. On October 22, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on February 22, 2011. See ECF #19. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in assessing plaintiff's credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to defendant for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.    <u>Dr. Ho</u>

Plaintiff challenges the following findings made by the ALJ:

. . . [O]n January 23, 2009, Dr. Marie Ho[, M.D.,] completed a physical evaluation. Therein, Dr. Ho reported that the claimant was limited to

REPORT AND RECOMMENDATION - 4

> standing/walking cumulatively up to 2 hours of an 8 hour workday, and that
> lifting/carrying would be limited to 10 pounds occasionally and 10 pounds
> frequently (Exhibit 16F). In reaching this conclusion, the undersigned gives
> substantial weight to the opinion of Dr. Ho since it [sic] consistent with other
> clinical and objective findings of record.

AR 21. Specifically, plaintiff argues the ALJ erred in giving such weight to Dr. Ho's findings, because Dr. Ho did not address the possibility of a sit/stand option. But plaintiff does not point to anything in Dr. Ho's evaluation to indicate that such an option was appropriate, nor does she point to any other objective medical evidence in the record that would support one. Indeed, the only evidence plaintiff appears to rely on here to argue for a sit/stand option being adopted by the ALJ, is her own testimony. As discussed in greater detail below, however, the ALJ properly discounted plaintiff's testimony, and thus was not required to adopt that option.

Plaintiff also argues the ALJ erred in not mentioning specifically Dr. Ho's statement that her history of anxiety/depression, attention deficit disorder and poor memory "may limit her ability to function in the workplace." AR 399. Generally an ALJ must consider the opinion of a physician regarding a claimant's mental condition – at least as so far as it affects the claimant's physical capabilities. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (rejecting assumption that psychiatric evidence must be offered by board-certified psychiatrist, as under general principles of evidence law, primary care physician was qualified to give medical opinion on claimant's mental state as it related to her physical disability). Here, however, it is not at all clear Dr. Ho felt plaintiff's mental impairments in fact *would* limit her ability to function in the workplace, or if he did, to what extent. As such, the undersigned finds any error the ALJ may have made in this regard to be harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

B.     Dr. Wheeler

A state agency psychological/psychiatric evaluation form was completed by Kimberly Wheeler, Ph.D., in late November 2008, in which she assessed plaintiff with moderate to marked limitations in a number of mental functional areas, based on diagnoses of dysthymia and alcohol abuse in early remission. See AR 323-28.  Dr. Wheeler completed another such form in early February 2010, in which she again assessed plaintiff as having moderate to marked limitations in a number of mental functional areas – although more in the moderate category this time – based on diagnoses of alcohol dependence in partial/early remission, a reading disorder, a mathematics disorder, and borderline intellectual functioning. See AR 438-47.  Dr. Wheeler assessed her with a global assessment of functioning ("GAF")[1] score of 59 as well, indicating "moderate symptoms affecting employment, leisure skills, [and] movement through [the] community."[2] AR 442.

Plaintiff argues the ALJ erred in not including in her residual functional capacity – which is discussed in greater detail below – the limitations Dr. Wheeler found.  The undersigned finds the ALJ erred here, given that the only mental limitation the ALJ adopted was that restricting plaintiff to performing simple repetitive tasks, Dr. Wheeler assessed a number of functional limitations the one adopted by the ALJ does not account for, and, although the ALJ gave a summary of Dr. Wheeler's findings, he did not state what weight he was giving thereto. See AR 16, 19-20, 325, 444.  While it is not clear at this point whether the ALJ would be required to adopt all of those limitations, at the very least he had to set forth specific and legitimate reasons

_____

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

[2] See also **Error! Main Document Only.**Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) ("A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'") (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 34).

for not doing so. <u>Lester</u>, 81 F.3d at 830-31.

C. <u>Dr. Krueger</u>

A state agency psychological/psychiatric evaluation form also was completed by Keith Krueger, Ph.D., in late January 2009, in which he too diagnosed plaintiff with mostly moderate, but some marked, limitations in a number of mental functional areas, based on diagnoses of a learning disorder, a depressive disorder and alcohol abuse in reported remission. <u>See</u> AR 400-05. Plaintiff here too argues the ALJ erred by not including those limitations in his assessment of her residual functional capacity. While again it is not clear at this point whether the ALJ would be required to do so, once more he erred by failing to provide specific and legitimate reasons for not adopting them. Indeed, the ALJ did not mention that evidence at all his decision. Accordingly, the ALJ erred here as well.

D. <u>Dr. Burke</u>

Plaintiff next takes issue with the following findings made by the ALJ:

On January 13, 2009, Jon Burke, Ph.D., gave the claimant a psychological evaluation. Dr. Burke reported that the claimant's affect for the most part was flat throughout the interview however mostly appropriate to the content of her thinking. Her thoughts were organized in a coherent, logical and relevant manner without any evidence of disorganization or flight of ideas. There were no expressions of any particular somatic difficulties. She was oriented in all four domains. On formal evaluation, the claimant was capable of correctly repeating six digits forward and three digits backward. Dr. Burke opined that typically this type of performance is expected of somebody of [sic] being slightly below average in terms of intelligence but certainly not mentally [sic] retardation. Further evaluation revealed that the claimant made a number of minor single-digit errors in serial threes test but was able to complete the task to the end. She also exhibited no difficulties after a five minute delay, correctly recalling three items. Her fund of general information was a bit lacking in that she could provide correct answers to only 3 of 10 items. She was also able to correctly define 6 of 8 vocabulary words (Exhibit 13F).

. . . Dr. Burke reported that it is clear that the claimant has the capacity to regularly engage in carrying out uncomplicated instructions as well as simple one or two step instructions. Her span of attention is sufficient to allow her to

carry out uncomplicated or simple one or two step instructions, although, she would be unable to engage in the completion of complex instructions on a sustained basis. Dr. Burked [sic] concluded that the claimant is capable of performing unskilled work activities. Dr. Burked [sic] diagnosed adjustment disorder with depression with a global assessment of functing (GAF) score of 63, indicating <u>mild</u> limitation of functioning due to mental impairments . . .

. . .

. . . [T]he undersigned has considered the opinion of Jon Burke, Ph.D. In January 2009, Dr. burke reported that the claimant has the capacity to regularly engage in carrying out uncomplicated instructions as well as simple one and two [sic] instructions, but would be unable to engage in the completion of complex instructions on a sustained basis. Dr. Burke concluded that the claimant is capable of performing unskilled work activities (Exhibit 13F). Dr. Burke's conclusion is consistent with the claimant's actual functional mental limitations . . . Consequently, greater weight is assigned to the opinion of Dr. Burke, as his opinion is well supported by the record.

AR 19-21 (emphasis in original). Plaintiff argues the ALJ erred in relying on Dr. Burke's opinion, since Dr. Burke himself appeared to base his opinion in part on inaccurate information regarding her educational background and past work attempts. Even if it is true, as plaintiff asserts, that such information was not entirely accurate, plaintiff has not shown Dr. Burke relied thereon to a greater extent than other evidence, such as his own observations of plaintiff and the mental status examination he performed at the time. <u>See</u> AR 372-75; <u>see</u> <u>also</u> <u>Sanchez v. Apfel</u>, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (when mental illness is basis of disability claim, clinical and laboratory data may consist of diagnoses and observations of professionals trained in field of psychopathology); <u>Clester v. Apfel</u>, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as results of a physical examination do so for diagnosis of physical illness or injury); <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion that is based on clinical observations supporting diagnosis of depression is competent psychiatric evidence).

The undersigned also rejects plaintiff's argument that less weight should have been given

REPORT AND RECOMMENDATION - 8

to the opinion of Dr. Burke, on the basis that he was unaware of the findings and opinions of Dr. Wheeler and Dr. Krueger. There is no requirement, however, that an examining medical source must have access to the evaluation reports of other such sources. Indeed, the value of examining medical source opinions come from the particular examinations those sources perform, although such sources certainly may review other medical records if they are available.

Rather, in general it is the job of the testifying medical expert or another non-examining, consultative medical source to provide an opinion based on his or her review of the record as a whole. In any event, the ALJ did not err here on this basis. On the other hand, because the ALJ did not provide any analysis of the opinions of Dr. Wheeler or Dr. Krueger, it is unclear whether he properly considered Dr. Burke's opinion in light of those of the other two examining medical sources, and thus in light of the medical evidence in the record as a whole. Therefore, it cannot be said at this point that the ALJ's reliance on Dr. Burke's opinion was warranted.

E.    Dr. Gordy

At the hearing, the medical expert, Dr. Tracy Gordy, testified that issues with intellectual functioning "would be a problem" for her "in the sense that . . . she's not going to qualify for a lot of jobs," although he did feel that "if she had simple tasks that were sedentary in nature, . . . she probably would be able to do that." AR 49-50. In terms of plaintiff's ability to continuously "show up for work," Dr. Gordy further testified in relevant part that:

> . . . It would depend entirely upon the job . . . If she had a job where she got feedback that was good for her self-esteem and she knew that she was productive and realized that her income would be greater than she had from any other source, she very likely could. Without that kind of a situation, she probably couldn't . . .

AR 51. Dr. Gory went on to testify that the type of accommodation being referred to here was not necessarily limited to a sheltered work situation, "because even a sheltered situation . . . can

often be pressured so that a person couldn't go back because . . . the . . . self-esteem . . . is going to be an issue that has to be dealt with." AR 51.

The ALJ stated in his decision that he had afforded "great weight" to the testimony of Dr. Gordy "regarding the nature and severity of" plaintiff's "actual functional mental condition." AR 21. Plaintiff argues that despite giving great weight to Dr. Gordy's testimony, the ALJ failed to accommodate the limitations in that testimony just noted. Given that, as discussed above, the ALJ only limited plaintiff to performing simple, repetitive tasks in his assessment of her residual functional capacity – which clearly does not account for the difficulties plaintiff likely would have with showing up for work noted by Dr. Gordy – the undersigned agrees that the ALJ failed to properly evaluate Dr. Gordy's testimony, and thus erred here as well.

F.      Dr. Postovoit and Dr. Gardner

The record contains a mental residual functional capacity assessment form completed by Leslie Postovoit, Ph.D., in mid-January 2009, and affirmed by Jerry Gardner, Ph.D., in late May 2009, in which plaintiff was assessed as being moderately limited in her ability to understand, remember and carry out detailed instructions. See AR 390. More specifically, Dr. Postovoit and Dr. Gardner concluded plaintiff would be limited to performing simple, repetitive tasks, with no other significant mental functional limitations. See AR 392.

In his decision, the ALJ stated that he concurred with the opinion of Drs. Postovoit and Gardner that plaintiff's impairments were not disabling, as it was "consistent with the medical record, which show[ed] frequent outpatient records of subjective complaints, but little objective evidence to substantiate [her] allegations." AR 21. Plaintiff argues the ALJ erred in doing so, because Dr. Postovoit and Dr. Gardner did not review Dr. Krueger's opinion or the most recent one from Dr. Wheeler. The record does indicate Drs. Postovoit and Gardner issued their opinion

regarding plaintiff's ability to work prior to those other opinions. Further, as discussed above, the ALJ failed to properly evaluate the opinions of Dr. Wheeler and Dr. Krueger, which include more significant mental functional limitations than found by Drs. Postovoit and Gardner. Thus, the ALJ's reliance on the opinion of Drs. Postovoit and Gardner was improper.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Here, the ALJ discounted plaintiff's credibility in part because her allegation of disabling physical limitations was inconsistent with the objective medical evidence in the record. See AR 17-18. An ALJ's determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues this is not a specific reason for discounting her need for a sit/stand option. But as discussed above, the substantial medical evidence in the record fails to support a need for such an option. Accordingly, the ALJ did not err in discounting plaintiff's credibility for this reason.

The ALJ also discounted plaintiff's credibility in part because she was not completely compliant with medical treatment. See AR 17. A claimant's failure to assert a good reason for not following a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In addition, the ALJ noted that plaintiff's physical condition improved, and that there was no need for aggressive treatment such as surgery. See AR 18-19. The ALJ further pointed out that in regard to her mental health, plaintiff reported in late January 2009, that she "was no longer on any psychiatric medication," and that she had "never been hospitalized for psychiatric problems," and reported in July and August 2009, that she experienced "significant improvement with depression and anxiety following treatment with . . . medication. AR 20. see Morgan, 169 F.3d at 599 (ALJ may discount claimant's credibility based on medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (same); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (prescription

REPORT AND RECOMMENDATION - 12

for conservative treatment only suggestive of lower level of pain and limitation).

Plaintiff argues that the medication she was taking did not improve all of her symptoms, and that it had never allowed her to work in the past. As for the latter assertion, plaintiff does not point to any evidence in the record indicating such was the case, nor – to the extent the evidence does support this assertion – would that fact necessarily have any bearing on the relevant issue in this case, that is whether she has been able to work since her alleged onset date of disability. As for plaintiff's assertion that medication did not improve all of her symptoms, complete cessation of alleged symptoms is not required for medical improvement to constitute a legitimate basis on which to discount a claimant's credibility. Nor does the record show medication was required in order for plaintiff to experience improvement in her alleged disabling mental impairments. For example, the ALJ pointed out that her history of attention deficit hyperactivity disorder had been "controlled without medication." AR 20.

Lastly, the ALJ discounted plaintiff's credibility for the following reason:

> . . . [T]he claimant testified to performing <u>extensive</u> activities of daily living, which further detracts from the credibility of her complaints. For example, the claimant reported during an evaluation, that during a typical day she may go shopping with her mother and, at other times, she uses the computer for recreation as well as to obtain other information. She also assists her mother with household chores such as cleaning, preparing meals and grocery shopping. The claimant also reported that she and friends occasionally go to the local shooting range and discharge firearms. She also spends a lot of time visiting with friends and relatives. She has no problems maintaining personal hygiene. The claimant further acknowledged that she enjoys interacting with coworkers, supervisors and other people whom she encounters (Exhibit 13F). Her hobbies also included crafting (Exhibit 16F/2). . . . [T]he claimant's actual daily activities reveal a significantly greater physical and mental functional ability than alleged.

AR 20-21 (emphasis in original). In determining whether a claimant is credible, the ALJ may consider that claimant's daily activities. <u>Smolen</u>, 80 F.3d at 1284. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility

REPORT AND RECOMMENDATION - 13

determination." <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (9th Cir. 2007).

First, a claimant's daily activities can "meet the threshold for transferable work skills." <u>Smolen</u>, 80 F.3d at 1284  Such testimony may be rejected, though, only if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." <u>Id.</u> at 1284 n.7.  However, the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." <u>Id.</u>  Second, a claimant's daily activities can "contradict his [or her] other testimony." <u>Orn</u>, 495 F.3d at 639.

The Court agrees with plaintiff that the record does not necessarily show that she has the ability to perform household chores for a substantial part of the day or that the other activities she has engaged in are necessarily transferrable to a work setting. <u>See</u> AR 43-45, 232-37, 374. On the other hand, plaintiff has indicated that she very much enjoys, and has no trouble being around, other people – despite also testifying that she only likes being around those who are not smarter than she is – and that she engages in physical activities such as shopping for up to three hours at a time one to four times a week. <u>See</u> AR 40-41, 235-37, 374.  Indeed, Dr. Burke pointed out that plaintiff had denied her activities of daily living were "limited by any mental disorder of any sort." AR 374.  As such, the undersigned finds the second <u>Smolen</u> ground for discounting a claimant's credibility based on such activities has been met here.

Even if the ALJ erred in relying on plaintiff's activities of daily living in discounting her credibility, furthermore, the fact that one of the reasons for discounting her credibility was not proper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the other valid reasons noted above. <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 1148.

III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

As plaintiff points out, the record contains a statement from what appears to be a Social Security staff person who apparently had contact with her, and who stated as follows:

**CLAIMANT WAS A MESS. THAT'S THE ONLY WAY TO DESCRIBE IT. FURTHERMORE, SHE WAS BELOW THE LEVEL OF INTELLECT FOR HER AGE AND WAS "SLOW."**

AR 196 (emphasis in original). Defendant agrees with plaintiff that the ALJ erred in failing to discuss at all this statement. It constitutes competent lay witness evidence bearing on the severity of plaintiff's impairments that the ALJ could not ignore, without first giving a germane reason for doing so. See 20 C.F.R. § 416.913(d) (defendant may also use evidence from other sources to show the severity of claimant's impairment(s) and how those impairments affects his or her ability to work).

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that

step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process,"[3] the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the residual functional capacity:

> **. . . [T]o perform sedentary work . . . except [she] would be precluded from balancing and climbing of ladders, ropes and scaffolds or working around hazards such as unprotected heights or dangerous moving machinery. She could engage in occasional crawling, crouching, kneeling, stooping and climbing of ramps and stairs. Mentally, [she] would be limited to performing simple repetitive tasks.**

AR 16 (emphasis in original). Plaintiff argues this RFC assessment does not accurately reflect

---

[3] At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1. See 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.

her functional limitations. The undersigned agrees that because, as discussed above, the ALJ erred in evaluating the medical and lay witness evidence in the record regarding her mental limitations, the ALJ's assessment of plaintiff's residual functional capacity cannot be deemed to be entirely accurate at this time. On the other hand, because the ALJ did not err in evaluating the medical and other evidence in the record concerning plaintiff's physical limitations, the ALJ did not err in failing to adopt any additional such limitations.

V.      The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

functional capacity. See AR 53-54. In response thereto, the vocational expert testified that an individual with those limitations – and who had the same age, education and work experience as plaintiff – could perform other jobs. See AR 54-55. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See AR 22-23.

Plaintiff argues that for the same reasons the ALJ's RFC assessment is inaccurate, so too is the hypothetical question the ALJ posed to the vocational expert. Once more, the undersigned agrees also for the same reasons set forth above. Plaintiff further argues the ALJ erred in light of the vocational expert's testimony that an inability to respond to and tolerate the normal pressures of the work place would eliminate all work. See AR 56. But it is not at all clear that the medical evidence in the record supports an *inability* to do so, even in light of the improperly discredited opinions of Dr. Wheeler and Dr. Krueger, given that the majority of the medical opinion source evidence appears to support only a moderate limitation in plaintiff's ability in that area. See AR 325, 391, 402, 444. Accordingly, the undersigned finds no error here.

Plaintiff goes on to argue she would be particularly ill-suited for the jobs identified by the vocational expert, which included assembler and touch-up screener. See AR 54-55. In regard to the assembler job, however, the evidence in the record does not definitively show plaintiff is unable to perform adequately in a fast-paced work environment. Nor does plaintiff point to any evidence in the record that any difficulties she may have had working in a sandwich shop in the past, would preclude her from performing the job of touch-up screener. Rather, this seems to be based merely on plaintiff's own speculation.

Lastly, plaintiff argues that because both of the above jobs are defined by the Dictionary of Occupational Titles ("DOT") as involving Level 2 reasoning, whereas the ALJ limited her to

REPORT AND RECOMMENDATION - 18

performing simple, repetitive work, which plaintiff appears to argue is more analogous to Level 1 reasoning, she cannot perform those jobs. The DOT defines Level 1 and Level 2 reasoning as follows:

> LEVEL 2
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 1
>
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C. The undersigned disagrees that the ALJ's limitation to performing simple, repetitive work is commensurate with Level 1 reasoning in this case. Several courts have found Level 2 reasoning to be consistent with the ability to perform simple, routine and/or repetitive work tasks. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding Level 2 reasoning more consistent with limitation to simple, routine work tasks); Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D. Cal. 2005) (finding limitation to simple, repetitive tasks closer to Level 2 reasoning); Flaherty v. Halter, 182 F.Supp.2d 824, 850-51 (D. Minn. 2001) (finding Level 2 reasoning did not conflict with limitation to work involving simple, routine, repetitive, concrete, and tangible tasks).

It is true that at least one court appears to disagree with the position taken by the above courts. Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that claimant limited to following only simple instructions can engage in full range of sedentary work because many unskilled jobs in that category require reasoning levels of 2 or higher). However, the undersigned finds more persuasive the discussion of this issue made by the United States District

Court for the Central District of California:

> This leaves the question of whether the vocational expert's opinion contradicted the DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding limiting Meissl to "simple, repetitive" tasks. The Court finds that it does not.

> As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT at 1011. In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete variables ...." DOT at 1011. The middle ground between these two points is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.

> A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.

> Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also* 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs

with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir.2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry

out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001).

Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D.Cal. 2005). Accordingly, the undersigned does not find this to be a proper basis upon which to reverse the ALJ's decision. Further, while plaintiff goes on to assert that the language and mathematics levels required for the above two jobs may exceed her capabilities, again plaintiff does not point to any evidence in the record to support her assertion, and thus the undersigned rejects it as being too speculative.

VI.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

REPORT AND RECOMMENDATION - 22

Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental limitations, the lay witness evidence in the record, plaintiff's residual functional capacity, and her ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded for further administrative proceedings.

Plaintiff argues that because the ALJ erred in evaluating the opinions of Dr. Wheeler and Dr. Krueger, those opinions should be credited as true. It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted). But where the ALJ is not required to find the claimant disabled on the crediting of such evidence, this constitutes an outstanding issue that must be resolved, and thus the <u>Smolen</u> test will not be found to have been met. <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003). In addition, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by the improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." <u>Bunnell</u>, 336 F.3d at 1116. Because it is not clear that plaintiff would be found disabled based on the improperly discredited medical evidence in this case – particularly in light of the ALJ's adverse credibility determination and the absence of vocational expert testimony that adequately addresses such evidence – the undersigned finds the credit as true rule should not be applied here, and thus declines to do so.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the Court should reverse defendant's decision to deny benefits and should remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 12, 2011**, as noted in the caption.

DATED this 28th day of July, 2011.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 24